### EX PARTE YOWN.

1. A deed conveyed land to " S., her heirs and assigns (for and during her natural life, should she die without issue) . . . to have and to hold the said tract unto the said S., her heirs and assigns for and during her natural life as aforesaid. Should she die without bodily issue, the said tract to revert to the children of D., deceased. But should the said S. have a child or children, then the said land to rest in them absolutely." S. died without issue. *Held*, that, by this deed, S. took an absolute estate, which, at her death, intestate, passed to her heirs at law.

2. This deed purported to have been made in pursuance of a prior agreement, and such agreement recited that S., the widow of one D., and the five sons of D. by a former marriage, had agreed to divide the property, giving to "S. one-sixth in lieu of all claim of dower, the property coming to her under said agreement, she hereby agrees that she will take good care of, and if she should die without bodily heirs then she hereby agrees and covenants that, at her death, all the remaining property shall revert back to the heirs of D "; *provided*, the said sons took care of her while she lived if she became helpless or needy. The widow having become helpless and needy and not being assisted by the sons, *Held*, that the condition stipulated as that upon which the land was to revert not having been performed, the fee remained in S. under this agreement, and it mattered not that the sons were ignorant of her needs.

3. There was nothing in this agreement or deed in the nature of a covenant to stand seized to uses.

4. There is nothing in the agreement that would authorize the Court to reform the deed because of accident or mistake, the agreement itself showing an intention that the fee should not be reduced to a life estate except upon a contingency which never happened.

5. The declarations of S. as to the nature of her estate amounted to no more than the expressions of an opinion, and were, therefore, inadmissible as evidence against her heir at law.

Before Fraser, J., Anderson, October, 1881.   The opinion states the case.

Messrs. *Featherston & Benet, B. F. Whitner*, for appellants.

Mr. *J. L. Tribble*, contra.

August 8, 1882.   The opinion of the Court was delivered by

Mr. Justice McIver.—John L. Davis died intestate in 1863, leaving as his heirs at law five sons, children of a former marriage, and his widow, Sallie Davis.   The heirs being all of age, determined to close up the estate without administration, and, for this purpose, on August, 1863, entered into an agreement, which was reduced to writing, whereby agents were appointed to sell the estate and divide the proceeds; but one-sixth, embracing the land about which this controversy arises, does not seem to have been sold by these agents.   By this agreement, the widow, upon certain conditions therein stated, agreed to share equally with the children, and to take her share for life, with remainder to the other heirs, in case she should die without issue.   The material terms of this agreement are expressed in the following language:. " The said Sallie Davis, the widow, agreeing to receive a child's share of said estate, in lieu of all claim of dower in said estate, the property coming to her under said agreement, she hereby agrees she will take good care of, and if she should die without bodily heirs, then she hereby agrees and covenants that, at her death, all the remaining property shall revert back to the legal heirs and representatives of the before-named John L. Davis, deceased; *provided*, the children of the said deceased shall, on their part, faithfully carry out their part of said agreement—they, the before-named Wm., T. W., J. H., T. G., and G. W. Davis, for and in consideration of the said Sallie Davis, the widow, allowing the share coming to her as aforesaid to revert back to them at her death, do covenant and agree that, should the said Sallie Davis, by any unforeseen accident, become helpless or needy in her lifetime, they bind themselves, their heirs and assigns, to take care of her while she lives."

In pursuance of this agreement, the five sons of the intestate, on August 26th, 1863, executed a deed to Sallie Davis for the tract of land, which (or rather the proceeds of its sale) is the subject-matter of controversy. This deed, after referring in its preamble to the above-mentioned agreement, proceeds in the following words: "In consideration of the before recited agreement, and in consideration of the sum of twelve hundred and ten dollars to us paid by Sallie Davis, have bargained, granted, sold, and by these presents do grant, bargain, sell, and release unto the said Sallie Davis, her heirs and assigns (for and during her natural life, should she die without issue) all that plantation, etc., containing one hundred and twenty acres more or less, bounded . . . To have and to hold the said tract of land unto the said Sallie Davis, her heirs and assigns, for and during her natural life as aforesaid. Should she die without bodily issue, the said tract of land to revert to the children of the said John L. Davis, deceased. But should the said Sallie Davis have a child or children, then the said land to rest [sic] in them absolutely forever."

Sallie Davis died intestate in 1880, without issue, leaving as her only heir at law her sister, the petitioner, Polly Yown, and administration of her estate was duly committed to the other petitioner, J. L. Brock. After her death, the sons of J. L. Davis commenced an action for partition of the tract of land conveyed by the above-mentioned deed to Sallie Davis, making all the heirs of J. L. Davis parties, but not making the heir of Sallie Davis a party. Under this proceeding the land has been sold, and the proceeds are now in the hands, or under the control of the Court. At this stage of the case, Polly Yown filed her petition, claiming the proceeds of the sale as heir of Sallie Davis; and J. L. Brock filed his petition, asking that so much of said proceeds as may be necessary for the payment of the debts of Sallie Davis should be paid over to him as her administrator.

The Circuit Judge held that Sallie Davis had an estate in fee simple in said tract of land, but inasmuch as the petitioners did not seek to set aside the sale or disturb the purchaser in his possession, but were content to go upon the proceeds

of the sale, he decreed that so much of said proceeds as would be necessary to pay the debts of Sallie Davis should be paid to her administrator, and that the balance should be paid to Polly Yown as her sole heir at law. From this decree the heirs of John L. Davis appeal, and the real question made is whether Sallie Davis was entitled to an estate in fee simple in said fund or only to an estate for her life.

There can be no doubt but that at the death of John L. Davis, Sallie Davis, his widow, was entitled, as one of his heirs, to one-third of his estate in fee simple. This she could surrender in whole or in part, both as to the amount of her share and the quality of the estate she had therein. It does not seem to be contested that she has consented to cut down her interest from one-third to one-sixth, and the practical question is whether she has cut down her estate therein from a fee simple to an estate for her life only, with remainder to the other heirs of John L. Davis. The appellants contend that she has done so, and for this purpose rely upon the terms of the above-mentioned deed, construed in connection with the agreement. But even if these two papers be construed together, we are unable to perceive how such a result can be reached. The most that can be said is, that the agreement indicates a willingness on the part of Sallie Davis to reduce her estate to an estate for life, in the event that two conditions shall be fulfilled : 1st, that "she should die without bodily heirs." 2d, that should she "become helpless or needy in her lifetime" that the other heirs would "take care of her while she lives."

The first of these conditions was fulfilled, she having died without leaving any heirs of her body, but the Circuit Judge finds, as matter of fact, and we think his finding is fully supported by the evidence, that the second condition was not performed. It will not do to say that the sons were never called upon to render any assistance to Sallie Davis, and did not know of her helpless and needy condition, and were, therefore, not in fault in not performing the duty required of them by this condition. The proviso upon which she consented by this *executory* agreement that her estate should be cut down to a life estate was, that they were *to take care* of her while

she lived, that is, look after her wants and see that she was properly provided for. This, the testimony shows, they wholly failed to do, and thus the condition upon which her estate was to terminate with her life wholly failed.

This, then, being the proper construction of the agreement, what is the effect of the deed construed, either separately or in the light of such agreement? Looking to the terms of the deed alone, we think it plain that it conveyed an estate in fee simple and not an estate for life merely. The words " do grant, bargain, sell, and release unto the said Sallie Davis, her heirs and assigns," are certainly the most appropriate words that could be used to create an estate in fee simple, and the subsequent words used cannot have the effect of cutting that estate down to a life estate. The words immediately following those just quoted, " for and during her natural life should she die without issue," cannot have any more force and effect than words of similar import used in McAllister's will, by which he gave to N. M. Arnold a certain tract of land " in fee simple for life," and there it was held that the devisee took an estate in fee, and that the superadded words "for life" must be " regarded as repugnant to the estate already conferred, and should be rejected." *McAllister* v. *Tate*, 11 *Rich.* 515.

The words to Sallie Davis, " her heirs and assigns," in the case now under consideration, are practically the same as the words to N. M. Arnold, "in fee simple," and the additional words "for and during her natural life should she die without issue," are in effect the same as the words "for life" in McAllister's case. This case is even stronger than that, for there the question arose under *a will*, where greater latitude is allowed in seeking for the intention, while here the question is as to the construction of a deed, where one of the rules is that its terms must be taken most strongly against the grantor.

The same remarks will apply to the terms used in the *habendum* clause, " to have and to hold the said tract of land unto the said Sallie Davis, her heirs and assigns, for and during her natural life as aforesaid "—the superadded words " for and during her natural life " must be rejected as manifestly repugnant

to the estate already secured. And the words "should she die without bodily heirs the said tract of land to revert to the children of the said John L. Davis, deceased," amount to nothing more than a bungling attempt to create a limitation over by way of executory devise, which, of course, cannot be done by deed. We think, therefore, that the Circuit Judge was clearly right in the conclusion which he has reached, and that he is fully supported by the authorities cited by him. *Edwards* v. *Edwards*, 2 *Strob. Eq.* 101; *Allen* v. *Fogler*, 6 *Rich.* 54, to which may be added the case of *Adams* v. *Chaplin*, 1 *Hill Ch.* 265.

It is not unimportant to bear in mind that Sallie Davis was unquestionably once invested with an estate in fee; that she has never, by any conveyance, parted with that estate; and that the most she has done was to agree that such estate should be reduced to a life estate only upon the performance of a certain condition by the appellants, which they have failed to perform, and that the deed which appellants claim has, by estoppel, cut down her fee to a life estate, if construed by the light of its own terms only, must be regarded as creating in her an estate in fee, and not an estate for life merely; and even if construed in connection with the preceding agreement, it cannot, by estoppel, operate to defeat the real intention of the parties, which was that the estate of Sallie Davis was to terminate with her life only in the event that the conditions named, one of which has failed, should be fully performed.

We are unable to see how "the agreement as acted upon by the deed," can be regarded as a covenant to stand seized to uses, whereby Sallie Davis reserved a life estate to herself with remainder to the other heirs of J. L. Davis, as contended for by one of the counsel for appellants. These papers do not purport to rest, and are not in fact based upon such a consideration as is necessary to support that species of conveyance. And even were they regarded as a covenant to stand seized to uses, the construction contended for by the appellants would defeat what we have seen was the real intention of the parties.

Nor can we see that the appellants have made a case warranting the exercise of the power of the Court to reform agree-

ments upon the ground of accident or mistake, for it seems to us that the conclusion reached by the Circuit judge leaves the estate of Sallie Davis exactly where she intended it should be left in the event of the failure of either conditions upon which it was to take a different direction. It is conceded on both sides that, if she had died leaving issue, her estate was to remain what it originally was, a fee simple, and would have descended to such issue as her heirs; and inasmuch as it would not be possible to know with certainty whether she would have issue until her death, it was necessary that the fee should continue in her. And by the terms used in the agreement, Sallie Davis practically said, I agree that my estate, which is now a fee simple, shall, at my death without issue, be reduced to a life estate with remainder to the sons of Davis, *provided* they will take care of me in the event of my becoming helpless or needy; but, if these conditions are not fulfilled, then my estate is to remain as it is now, a fee simple. Hence, until these conditions were fulfilled, the estate originally in her could not be cut down to any lesser estate. She has never, by any conveyance, parted with any portion of her estate, and has only agreed that it should be reduced to a life estate upon a contingency which has never happened.

The only remaining inquiry is, whether the declarations of Sallie Davis as to the nature of her estate were competent. That was a question of law upon which her declarations, even if otherwise competent, would amount to nothing more than the expression of an opinion, and were, therefore, clearly incompetent.

The judgment of this Court is that the judgment of the Circuit Court be affirmed.